**PARKER RUST–PROOF CO. et al. v. WESTERN UNION TELEGRAPH CO. et al.**

**No. 169.**

Circuit Court of Appeals, Second Circuit.

March 6, 1939.

On Reargument July 20, 1939.

Owen & Owen, of Toledo, Ohio, and Ward, Crosby & Neal, of New York City (Scott H. Lilly, of Toledo, Ohio, Joshua Ward, of New York City, and Wilber Owen, of Toledo, Ohio, of counsel), for appellants.

H. Monroe Humason and Sawyer, Kennedy, Humason & Hazell, all of New York City (Alfred M. Houghton and Lawrence E. Webster, both of Washington, D. C., of counsel), for appellees.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge.

This is a bill in equity brought under R.S. § 4915, 35 U.S.C.A. § 63, to obtain a decree authorizing the commissioner of patents to issue a patent to Parker Rust-Proof Company, as assignee of an application filed by Robert R. Tanner on March 27, 1933. In the Patent Office an interference was declared between Tanner's application and two patents issued under date of January 31, 1933, to The Western Union

Telegraph Company as assignee of joint applications filed by Leo P. Curtin and Bernard L. Kline. Tanner claimed that his 1933 application was a continuation of an earlier application which antedated the joint applications of Curtin and Kline. The Board of Appeals, on February 27, 1937, affirmed the decision of the Examiner of Interferences awarding priority of invention to Curtin and Kline. No appeal was taken to the Court of Customs and Patent Appeals, and on May 3, 1937, the Commissioner refused a patent on Tanner's application. On August 23, 1937, the plaintiffs filed in the court below their bill of complaint seeking to have Tanner declared the first inventor of the subject matter of the interference, and naming as defendants Western Union, the owner of the patents, Curtin-Howe Corporation, an exclusive licensee in fields other than those of the telegraph and telephone, and Kline, one of the joint applicants. The bill alleged that Curtin, the other joint applicant, was not a necessary party and was not named as a defendant because he resided in New Jersey and could not be served with process. On November 16, 1937, the defendants answered, setting up that Curtin had interests by reason of unrecorded documents that made him an indispensable party. The case was heard upon this special defense only. The district court sustained it and dismissed the bill. From this decree the plaintiffs have appealed.

This is an appealable decree because it terminates the suit. That it leaves undetermined the ultimate question of priority between the inventions of Tanner and of Curtin and Kline does not make it interlocutory. See Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 96, 42 S.Ct. 35, 66 L.Ed. 144; Armstrong v. De Forest, 2 Cir., 13 F.2d 438; Hazeltine Corp. v. White, 2 Cir., 68 F.2d 715. The sole question before us is not who was the prior inventor but whether Curtin is an indispensable party defendant; more specifically, whether unrecorded documents revealed by the defendants after it was too late for the plaintiffs to begin a new suit in the District of Columbia, where Curtin could have been made a party (35 U.S.C.A. § 72a), will defeat the present suit in a district where he cannot be served.

So far as the recorded instruments disclosed, Curtin's interest was merely that of an inventor-assignor, and as such he was not a necessary party to a suit under R.S. § 4915. Standard Oil Co. v. Pure Oil Co., D.C.Dist.Col., 19 F.Supp. 833; Nakken Patents Corp. v. Westinghouse Elec. & Mfg. Co., D.C.E.D.Pa., 21 F.Supp. 336. The appellants urge somewhat faintly that they are entitled to rely upon the recorded title to determine who are adverse parties; but this position cannot be successfully maintained. The statute, 35 U.S.C.A. § 63, requires "notice to adverse parties," not adverse parties of record; and the recording provisions, 35 U.S.C.A. § 47, only protect subsequent innocent purchasers or mortgagees for value. The appellants are neither purchasers nor mortgagees.

It is further argued that the unrecorded documents introduced by the defendants do not give Curtin such an interest in the subject matter of the suit as makes him "an indispensable party." Long ago this term was defined by the Supreme Court in Shields v. Barrow, 17 How. 130, 139, 15 L. Ed. 158, as meaning "Persons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience." The definition has been frequently reaffirmed. See Minnesota v. Northern Securities Co., 184 U. S. 199, 236, 22 S.Ct. 308, 46 L.Ed. 499; Hazeltine Corp. v. White, 2 Cir., 68 F.2d 715, 717. Curtin's rights must be examined in the light of these principles.

After the assignment of the Curtin and Kline applications to Western Union, the latter granted to Curtin a transferable exclusive license permitting him to make, sell and use the invention of each of the applications for all purposes other than telephonic and telegraphic uses, with the right to sublicense others. Curtin in turn transferred his license to Curtin-Howe Corporation, and the latter entered into a rather complicated agreement with him, evidenced by Exhibits C and F, which were not recorded. Western Union also assigned to Curtin and Kline the entire right, title and interest in the inventions for all countries foreign to the United States, and Kline thereafter assigned his interest to Curtin. The instruments relating to foreign rights were likewise not recorded. It has not been made apparent by the defendants how Curtin's right to apply for patents in foreign countries could be affected by a decree awarding priority of invention to Tan-

ner with respect to letters patent of the United States. We shall therefore confine our consideration to Curtin's rights under Exhibits C and F.

Under the agreement evidenced by these exhibits, he had (1) the right to receive under certain conditions a royalty of 7½ per cent. of the gross revenues derived by Curtin-Howe Corporation from using or licensing others to use the inventions; (2) the right to have the Corporation's exclusive license revert to him if it should fail to develop the inventions commercially; (3) the right to receive an exclusive license for any specific use of the inventions suggested by him to the Corporation and not exploited by it; (4) the right to control by veto the sale by the Corporation of its exclusive license, or the granting by it of any subsidiary exclusive license; and (5) the right to receive one-half of the net profits received from any such sale, transfer or assignment of the exclusive license as Curtin might permit. The mere recital of these rights makes it clear, we think, that success by the plaintiffs in their suit will seriously prejudice Curtin's interests. A decision awarding priority of invention to them would certainly preclude any favorable sale of the Corporation's exclusive license in the patented inventions, and thereby destroy the possibility of profits one half of which would belong to Curtin. It would undoubtedly diminish royalties, to which he has a conditional right, and would destroy the value of his contingent reversionary interest in the Corporation's exclusive license. The appellants urge, relying upon cases such as D. M. Sechler Carriage Co. v. Deere & Mansur Co., 7 Cir., 113 F. 285, that such rights as Curtin has would not require him to be made a party to an infringement suit and that the rule should be the same in a suit under R.S. § 4915. Because of the difference in the language of R.S. § 4919, 35 U.S.C.A. § 67, we cannot regard infringement suits as controlling. Hence, in the absence of special circumstances making it inequitable to require Curtin to be joined, we should regard him as an indispensable party, as did the district court.

The doctrine that one whose interests will be affected by a decree must be made a party to the suit is an equitable doctrine, and a court of equity should not apply it, we think, where special circumstances would make its application inequitable. Such special circumstances exist in the case at bar. The bill was filed August 23, 1937. Had the defendants answered promptly setting up Curtin's unrecorded interests, there would have been ample time for the plaintiffs to have brought another suit in the District of Columbia, where jurisdiction would have existed over adverse parties residing in a plurality of districts (35 U.S.C.A. § 72a); but, as we shall later attempt to demonstrate, the time when such a suit could be brought expired on November 3, 1937—six months after refusal of the patent to the plaintiffs by the commissioner of patents. Instead of answering promptly and disclosing Curtin's interests, the defendants procured an extension of some sixty days. Their answer was not filed until November 16th. When the bill was filed Curtin was the president of Curtin-Howe Corporation, and two days thereafter he was notified by letter, addressed to him personally by the plaintiffs' solicitors, of the filing of the bill, a copy of which was furnished him, "in order that you may be fully acquainted with the situation and take such action, if any, as you may care to take in the proceedings." Paragraph ten of the bill, to which his attention was expressly directed by the letter, alleged that having parted with all his interest in the patents he was not an indispensable party to the suit, but invited him to appear voluntarily. Thus Curtin had personal knowledge of the suit and of the plaintiff's ignorance of his interests under the unrecorded documents. As president of Curtin-Howe Corporation we think he is chargeable with knowledge that the defendants were, in his interest, obtaining an extension of time to answer and were suppressing the objection that he was an indispensable party until it was too late for the plaintiffs to sue in the District of Columbia. The only purpose of such an objection was to protect Curtin's equitable rights and prevent his being concluded without a hearing; the Curtin-Howe Corporation had no recognizable interest of its own in balking the suit because of Curtin's absence; nor had Western Union. Under these circumstances we hold that the conduct of Curtin and his company was so inequitable that a court of equity should not sustain the objection. We need not, and do not, say that mere failure to inform a plaintiff of the unrecorded interests of

an indispensable party is enough to defeat the objection that he has not been joined. But where, with the absent party's knowledge, the defendants obtain an extension of time until a plaintiff's right to bring an effective suit has been lost, without disclosing the absent party's unrecorded interest, their conduct is such as a court that recognizes the objection only in the interests of equity should not allow to defeat the suit. While no authority has been found dealing with facts at all similar, the general principle has long been recognized that, as the object of the rule respecting indispensable parties is to accomplish justice between all the parties in interest, courts of equity will not suffer it to be so applied as to defeat the very purposes of justice. See Story, Equity Pleadings, 10th ed., § 77.

■ The defendants suggest that the six months' period for suit started to run from the date of the decision of the Board of Appeals, February 27th. If so, the period expired August 27th, which was prior to the date when the defendants' answer would have been due if no extension of time for answering had been obtained. But the contention cannot be sustained in view of the statutory language. 35 U.S.C.A. § 63, reads as follows: "Whenever a patent on application is refused by the Commissioner of Patents, the applicant, unless appeal has been taken from the decision of the board of appeals to the United States Court of Customs and Patent Appeals, and such appeal is pending or has been decided, in which case no action may be brought under this section, may have remedy by bill in equity, if filed within six months after such refusal; * * *."

This language is derived from R.S. § 4915, which, prior to the Act of March 2, 1927, 44 Stat. 1336, provided that "Whenever a patent on application is refused, either by the Commissioner of Patents or by the Court of Appeals of the District of Columbia upon appeal from the commissioner, the applicant may have remedy by bill in equity."

Prior to the 1927 changes, appeals within the Patent Office went from the primary examiner, or the examiner in charge of interferences, to the board of examiners in chief, and from them to the commissioner in person. R.S. §§ 4909, 4910, 35 U.S.C.A. §§ 57, 58. The 1927 amendment created the board of appeals, 35 U.S.C.A. §

7, and amended R.S. § 4909, to provide that appeals from the examiners should go to the board of appeals, 35 U.S.C.A. § 57. It repealed R.S. § 4910, thus abolishing appeals to the commissioner in person. 44 Stat. 1336. It also amended R.S. § 4915, in the manner quoted above in 35 U.S.C.A. § 63. The defendants would construe this as if the language were "Whenever a patent on application is refused by the board of examiners, the applicant, etc." Had this been intended, it would have been easy to state the intention in those terms. Instead, the amendment spoke in terms of a refusal by the commissioner. It is true that the statute contemplates that an applicant shall exhaust his remedies within the Patent Office by obtaining a decision of the board of appeals before he may resort to a bill in equity; but after the board of appeals has rendered an adverse decision it is the practice of the commissioner acting through the examiner in charge of an application to notify the applicant that no patent will be issued to him. We think that it is this formal act which the statute refers to as the refusal by the commissioner of a patent on application.

The decree is reversed with directions to permit Curtin to intervene as a party defendant, if he so desires; and otherwise to proceed with the suit without him.

### On Reargument.

Upon petition of the appellees a rehearing was granted as to whether the six months' period of limitation for suit under R. S. § 4915 as amended, 35 U.S.C.A. § 63, started to run from May 3, 1937, when the commissioner of patents, acting through the primary examiner, gave notice to Tanner that his claims in issue in the interference "stand finally rejected," or from February 27, 1937, when the Board of Appeals affirmed the decision of the examiner of interferences awarding priority of invention to Curtin and Kline. The additional briefs and arguments have confirmed us in our opinion that May 3rd was the critical date. The inference drawn from the express words of the statute finds further support in Rule 132 of the Patent Office, which provides: "Whenever an award of priority has been rendered in an interference proceeding by any tribunal and the limit of appeal from such decision has expired, * * * the primary examiner shall advise the defeated party or unsuccessful party or parties to the in-

terference that their claim or claims which were so involved in the issue stand finally rejected."

No importance can be attached to the fact that the rule employs the phrase "stand finally rejected" rather than "are finally rejected." When the commissioner, acting through the examiner, advises the applicant that his claims stand finally rejected, he then, for the first time, refuses the patent for such claims. Moreover, Patent Office Rule 141 requires that after a decision by an appellate tribunal, the case shall be remanded to the primary examiner, subject to the applicant's right of appeal, "for such action as will carry into effect the decision, or for such further action as the applicant is entitled to demand." Even after the Board of Appeals has awarded priority to one of the interferants, the commissioner may nevertheless issue a patent to the defeated party, if the successful interferant abandons his application without making the invention public. See Jolliffe v. Waldo, 1917 C.D. 15; Fanslow v. Whitney, 1919 C.D. 93; Nash v. Reeder, 1920 C.D. 72. Compare Milburn Co. v. Davis-Bournonville Co., 270 U.S. 390, at page 400, 46 S.Ct. 324, 70 L. Ed. 651, to the effect that abandoned applications are not prior art.

Neither party can find authoritative support for his contention in the decisions of the courts. Cases such as McKnight v. Metal Volatilization Co., C.C., 128 F. 51, are not persuasive, since they arose prior to the 1927 amendment to R.S. § 4915, 35 U.S.C.A. § 63. No case subsequent to the amendment involves a direct holding on the point. Two text writers state the rule in favor of the appellees, but they appear to base it upon the McKnight case and a dictum of this court in Syracuse Washing Mach. Co. v. Vieau, 2 Cir., 72 F.2d 410. See Stringham, Patent Interference Equity Suits, § 7962; 2 Walker, Patents, 1937 Ed., pp. 968, 969. The point was not argued in the Vieau case and we must retract the dictum contained in that opinion; against it the appellants set off contrary dicta in Synthetic Plastics Co. v. Ellis-Foster Co., 3 Cir., 78 F.2d 847, 848, and Wettlaufer v. Robins, 2 Cir., 92 F.2d 573, 576. In the absence of controlling case law, our decision must be guided by the natural meaning of the words of the statute and the practice of the Patent Office which is in harmony with such meaning. We therefore adhere to our former decision.