## SHELL DEVELOPMENT CO. v. UNIVERSAL OIL PRODUCTS CO.

### Civ. A. No. 424.

District Court, D. Delaware.

Aug. 7, 1945.

926

Theodore S. Kenyon, Douglas H. Kenyon, and Malvin R. Mandelbaum (of Kenyon & Kenyon), all of New York City, and Caleb S. Layton and Robert H. Richards, Jr. (of Richards, Layton & Finger), of Wilmington, Del., for plaintiff.

William F. Hall and Charles M. Thomas, both of Washington, D. C., and William S. Potter (of Southerland, Berl & Potter), of Wilmington, Del., for defendant.

Hobart N. Durham, Thomas R. MacDonald, and James J. Dwyer (of Morgan, Finnegan & Durham), all of New York City, and William H. Foulk, of Wilmington, Del., for Anglo-Iranian Oil Co., Limited.

LEAHY, District Judge.

In Interference No. 78,016 Visser v. Morrell, the award went to Morrell—Patent No. 2,169,809, now assigned to defendant.

Plaintiff brought this action under R.S. § 4915, 35 U.S.C.A. § 63, to authorize the issuance of a patent on application of *Gerardus H. Visser, Serial No. 150,544,* assigned to plaintiff. Defendant moved to dismiss the action on the ground of non-joinder of an indispensable party, Anglo-Iranian Oil Company, Ltd., a British corporation. The rights of Anglo-Iranian in the Morrell patent stem from two agreements, Universal Alkylation Agreement and Universal Alkylation Agency Agreement. The parties to these agreements are plaintiff, defendant, Anglo-Iranian, Texaco Development Corporation and the Standard Oil Development Company. Several months after defendant filed its motion to dismiss, Anglo-Iranian purported to enter a voluntary appearance in this action. Defendant argues that while Anglo-Iranian was a necessary and indispensable party the court lacks jurisdiction under R.S. § 4915 for the limitation period required in the statute had long since expired before Anglo-Iranian came forward.[1]

The Alkylation Agreement recites: "The parties hereto have existing patents and patent applications in the field of sulfuric acid

---

[1] Anglo-Iranian not being a resident of this district might under 28 U.S.C.A. § 112 raise a venue question. But, the matter of right of venue to have suit brought in the proper district may be waived.

See Hazeltine Corporation v. White, D. C., 2 F.Supp. 94, affirmed 2 Cir., 68 F.2d 715; Vogel v. Crown Cork & Seal Co., D. C., 36 F.Supp. 74.

alkylation which are believed to be in conflict and desire to settle such conflict." In substance, under the agreements Anglo-Iranian (1) receives a release for all past infringement; (2) a non-exclusive right to use the sulfuric acid alkylation process; (3) the right to grant releases for past infringement and to grant non-exclusive licenses to use the process; (4) the right to share in any moneys collected by defendant for any releases or licenses that may be granted; and (5) Anglo-Iranian has the right, defendant claims, when joined by two other parties to the agreement to "bring any suit or action or take any steps to prevent the infringement of any of the Sulfuric Acid Alkylation Patent Rights of the parties hereto, * * *."

Plaintiff argues that Anglo-Iranian is not an indispensable party because it possesses neither a legal nor a beneficial right in the Morrell patent and that its rights are merely contractual in nature.

■ The definition of an indispensable party found in Shields v. Barrow, 17 How. 130, 139, 15 L.Ed. 158, as "Persons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience" has been recently applied in Parker Rust-Proof Co. v. Western Union Telegraph Co., 2 Cir., 105 F.2d 976, 979, and United States v. Washington Institute of Technology, Inc., 3 Cir., 138 F.2d 25. Under this definition a mere non-exclusive license conveys no title or interest in the patent; United States v. General Electric Co., 272 U.S. 476, 47 S.Ct. 192, 71 L.Ed. 362; General Talking Pictures Corp. v. Western Electric Co., 304 U.S. 175, 546, 8 S.Ct. 849, 82 L.Ed. 1273; neither does the right to receive royalties transmute a pecuniary interest into one of indispensability; Rude v. Wescott, 130 U.S. 152, 9 S. Ct. 463, 32 L.Ed. 888; Tilghman v. Proctor, 125 U.S. 136, 8 S.Ct. 894, 31 L.Ed. 664;

United States v. Washington Institute of Technology, Inc., supra.

■■ Defendants argue that in an R.S. § 4915 proceeding the court is required to determine whether the controversy involves a patentable invention; Hill v. Wooster, 132 U.S. 693, 10 S.Ct. 228, 33 L.Ed. 502; Radtke Patents Corp. v. Coe, 71 App. D.C. 375, 122 F.2d 937; Triplett v. Line Material Co., 7 Cir., 133 F.2d 533; and Hansen v. Slick, 3 Cir., 230 F. 627; and if there should be a finding that the claims in suit are invalid a dismissal would place "a blight upon the Morrell patent so damaging as to in effect destroy it". The point is well taken. This circumstance alone would make Anglo-Iranian and all the other parties to the agreements indispensable parties. There can be no mistake but that the validity of the Morrell patent must be scrutinized in this, an R.S. § 4915 proceeding. In a suit by an unsuccessful applicant, priority of invention is not the lone issue. There must first be a valid patent to which priority can attach.[2] Hoover Co. v. Coe, 65 S.Ct. 955.

■ Anglo-Iranian's present and real interest in the Morrell patent lies in its control of the monopoly created by that patent. Under the agreements Anglo-Iranian has an irrevocable right to give releases for past infringement and an irrevocable right to grant licenses to members of its group without the consent of defendant or of any other party to the agreements. These rights place Anglo-Iranian in a position of partial control over the monopoly of the patent. It has the right in so far as it decides not to license to exclude others from the grant. But for the agreements defendant would have the exclusive control of the entire monopoly. Anglo-Iranian is free to license and to sue for the enforcement of licenses. While this power to license is not exclusive, it nevertheless permits a form of control in that it includes the right to license others to make, use and vend, a right recently held to be within the original grant. See Special Equipment Co. v. Coe, 65 S.Ct. 741. If plaintiff through Visser is found entitled to

---

[2] In a § 4915 proceeding both parties want the patent, neither would suggest questions of invalidity. The requirement that the Court must pass on validity removes this particular issue from without the adversary system. The Court, itself, must research through the prior art, be its own expert, become advocate for the government (but not for the Patent Office, which was of opinion validity existed) vis-a-vis both plaintiff and defendant. Perhaps the appointment of an advisory Master—for which there is no statutory authority—but on the basis of an exercise of the Chancellor's traditional powers—whose function will be to test validity at sword's length with both plaintiff and defendant, will meet the usual inability of the district judge to stop his business of judging to become an expert in many arts.

a patent, or if there should be a finding of invalidity, the monopoly now enjoyed through Morrell would terminate and obviously Anglo-Iranian et al. would lose interests such as are contemplated under the teaching of Shields v. Barrow, supra.

In addition, under the agreements if defendant or any of the other parties thereto refuse, upon the request of the three other parties, to enforce any claim it may have against any licensee under the Morrell patent, suit may be brought in defendant's name by the requesting parties to enforce such claim.

Plaintiff argues that Anglo-Iranian could never sue for infringement of any of defendant's patents and points out that the only pertinent portion of the agreements must be Art. IV, par. B, section (d), p. 5.[3] Plaintiff contends this language creates no right of any party or group of the parties to the agreements to sue for infringement of the patent of another. Art. III, par. D, p. 5 of the Agency Agreement is said to be of help in construing Art. IV, par. B, supra. Under Art. III, par. D,[4] it is shown that defendant retains control to release or license under its own patents and there is no right to veto conferred on Anglo-Iranian. But the argument fails to meet the points taken by defendant. It makes no claim that Anglo-Iranian can bring an infringement suit on the patent of another. It does claim that the plain language of the agreements admits of no mistake as to what the parties intended. In so far as the United States is concerned "any party shall" with the consent of two other parties to the agreement bring suit to prevent infringement "of any" of the Sulfuric Acid Alkylation Patent Rights "of the parties hereto", the expenses of the suit to be borne in the proportion the parties share in moneys collected. This construction of the provision does not overlook Art. II, par. A of the Agency Agreement, which states that defendant will not "acquire any title to or interest in" any of the Sulfuric Acid Alkylation Patent Rights of the four other parties to the agreement. This does not mean that by reason of Art. IV, par. B, any party acquired title to or a beneficial interest in the patent rights of the others. This does mean that if defendant refuses to bring an infringement suit and to this extent Anglo-Iranian's protection in the monopoly is threatened then three of the parties to the agreements may institute suit in defendant's name if, as a matter of procedure, this proves necessary, without vesting title to the patents in Anglo-Iranian or divesting title from defendant. True, Anglo-Iranian simply as a non-exclusive licensee might not be a necessary party in an infringement suit brought by defendant. But, actions under R.S. § 4915 are different types of actions from those brought under the Declaratory Judgment Statute and from infringement suits. Hence, decisions as to who are necessary parties under the latter types of action do not control here.[5] The conclusion is, then, that Anglo-Iranian is an indispensable party.

R.S. § 4915 provides that suit must be instituted "within six months after" the refusal of the Commissioner of Patents to issue the sought patent and upon "notice to adverse parties", meaning all indispensable parties. United States v. Washington Institute of Technology, Inc., supra. Here, Anglo-Iranian attempted to appear voluntarily and become a party to these proceedings after the expiration of the statutory six-month period. Plaintiff contends that the instant suit was commenced within the six-month period specified by the statute and if Anglo-Iranian is an indispensable party, as such it can waive the limitation point. Nachod & United States Signal Co. v. Automatic Signal Corporation, 2 Cir., 105 F.2d 981, looks to the contrary. It decided that for a federal district court to acquire jurisdiction in an R.S. § 4915 proceedng it is essential that all induspensable parties must be in court before

---

[3] "B. If, in so far as the United States is concerned,

\* \* \* \* \* \* \* \*

"(d) any party hereto shall, with the consent of two of the other parties hereto, bring any suit or action or take any steps to prevent the infringement of any of the Sulfuric Acid Alkylation Patent Rights of the parties hereto: the parties hereto agree that the expenses thereby incurred shall be borne and shared between Universal and the Oil Company parties in the same proportion as they share, pursuant to the provisions of Article III hereof, in moneys collected."

[4] "Subject to the provisions of paragraph D of Article III of the Alkylation Agreement Universal may grant releases and licenses under *its own* Sulfuric Acid Alkylation Rights in the United States *upon such terms and conditions as it sees fit.*" (Emphasis added.)

[5] United States v. Washington Institute of Technology, Inc., D.C.Del., 47 F.Supp. 384.

the expiration of the statute of limitation. See, too, Solomon v. Schlicker, D.C., 58 F. Supp. 444. These authorities are inapposite, plaintiff says, because in the instant case Anglo-Iranian has waived the limitation point and is in court. Doubt is expressed that a waiver by a party in a federal district court can cure a jurisdictional defect. For the rule of this case, however, the failure to comply with the requirements of the statute have been satisfied by the voluntary appearance. There is danger to such a rule for it should not be made to depend on the vagaries of indispensable parties, some of whom might elect to stay out. The rights and interests of the remaining parties to the agreements—Texaco Development Company and the Standard Oil Development Company—are reciprocal to those of Anglo-Iranian. No attempt was made to join them as parties and they have not appeared, although suit was commenced on June 16, 1944, over a year ago.

As the question of validity must be determined, obviously every party to the agreements has a real interest in these proceedings. The permission to allow Anglo-Iranian to join fails to correct the fatal defect of not joining the other parties to the agreements; and it is too late now to attempt to join such other parties. If this be hardship on plaintiff, it is one of its own making for not selecting the proper technics in getting all indispensable parties before a Court of competent jurisdiction. Defendant's motion to dismiss granted; and it is so ordered.