SHELL DEVELOPMENT CO. v. UNIVERSAL OIL PRODUCTS CO., and three other cases.

Nos. 9118-9121.

Circuit Court of Appeals, Third Circuit.
Argued May 24, 1946.
Decided Sept. 5, 1946.

---

422

Theodore S. Kenyon, of New York City (Richards, Layton & Finger, of Wilmington, Del., and Malvin R. Mandelbaum, of New York City, on the brief), for appellant in No. 9118.

Drury W. Cooper, of New York City (C. S. Layton and Robert H. Richards, both of Wilmington, Del., Hobart N. Durham, of New York City, and William H. Foulk, of Wilmington, Del., on the brief), for appellants in Nos. 9119, 9120, 9121.

Charles M. Thomas, of Washington, D. C., William S. Potter, of Wilmington, Del. (William F. Hall, of Washington, D. C., on the brief), for appellee.

Before GOODRICH and McLAUGHLIN, Circuit Judges, and KALODNER, District Judge.

McLAUGHLIN, Circuit Judge.

An equity patent action was instituted in the District Court under R.S. Section 4915, 35 U.S.C.A. § 63.[1] The complaint was dismissed on defendant's motion and the plaintiff appeals. The opinions of the District Court are reported in 61 F.Supp. 925 and 63 F.Supp. 476.

On December 21, 1943, in Interference No. 78,016, the Board of Interference Examiners of the Patent Office awarded priority of invention for certain chemical processes to defendant's assignor Morrell and against plaintiff's assignor Visser. The

---

[1] The relevant portion of the statute is quoted under the second question discussed in this opinion.

Shell Company not taking an appeal to the Court of Customs and Patent Appeals filed its complaint in this cause on June 16, 1944, five days prior to the expiration of the six months statute of limitations. The Shell Company was the only plaintiff and Universal Oil Products Company the sole defendant. On July 6, 1944 defendant moved to dismiss the complaint for the nonjoinder of an indispensable party, Anglo-Iranian Oil Company, Limited, a British corporation. The motion alleged "that it has been brought in the wrong district and therefore the Court is without jurisdiction; there being 'an adverse party' residing in a foreign country within the purview of 35 U.S.C.A. § 72a, to-wit, Anglo-Iranian Oil Company, Limited, having an interest in [the] patent * * * derived under an agreement dated April 12, 1939, profert of which is made, to which plaintiff and defendant and others are parties, * * *." It continued with the statement that the agreement, known as the International Alkylation Agreement, gave to Shell, to Universal, to the Anglo-Iranian Oil Company and others, certain specified interests in the Morrell patent.

On September 12, 1944, Anglo-Iranian Oil Company, Limited, entered an appearance in the suit saying that "it may be a proper party though not an indispensable party to this suit." A motion to strike that appearance on the ground that it was barred by the statute of limitations was filed by the defendant on December 11, 1944. Both motions were thereafter argued, and on August 7, 1945, the motions were granted and the complaint dismissed. The Court's opinion found Anglo-Iranian to be an indispensable party. However, it decided that the failure to comply with the requirements of the statute had been satisfied by voluntary appearance. It went on to find that under the agreements, the rights and interests of the other two parties thereto, Texaco Development Corporation and Standard Oil Development Company, are reciprocal to those of Anglo-Iranian. The Court then held that since no attempt had been made to join them as parties and since they had not appeared otherwise, the complaint must be dismissed.

On August 17, 1945, Texaco Development and Standard Oil Development entered voluntary appearances. Plaintiff requested a rehearing and defendant moved to strike the appearances. The Court denied the motion for rehearing and struck the appearances on the ground that the requirements of the statute were jurisdictional with the voluntary appearances under all the circumstances unable to cure the failure to comply with the statute.

Two grounds are urged by the appellant for reversal: (1) That the oil companies are not indispensable parties; and (2) That the statute does not require notice to them within the six months period provided for the filing of the complaint. The first point depends on the rights obtained by the oil companies under the Alkylation Agreement which is dated April 12, 1939.[2] Shell, Universal, Texaco, Standard and Anglo-Iranian were all parties to that contract. The purpose of the agreement is stated in its preamble, that "The parties hereto have existing patents and patent applications in the field of sulfuric acid alkylation which are believed to be in conflict and desire to settle such conflict." Both the Visser application and the Morrell patent concern sulfuric acid alkylation. By Article II A of the agreement Universal gives to the other companies an irrevocable royalty-free right to grant releases for past infringement of its sulfuric acid alkylation patent rights, and non-exclusive non-transferable licenses under certain conditions to use its process, to use in any country the products thereby produced and to sell the products to other companies of their group and jointly controlled companies. Article II B gives the companies for all countries except Japan, the non-exclusive right to grant to anyone not covered by II A, releases for past infringement of its said patent rights and, subject to the consent of a majority of the parties (not necessarily including Universal) to grant non-exclusive non-transferable licenses to use the sulfuric acid alkylation process under its sulfuric acid alkyla-

[2] There is a second agreement called "Universal Alkylation Agency Agree- ment" which is collateral to the main contract and need not be discussed.

tion rights and to sell or use in any country the products thereby produced. Such licenses are to be in the form attached to the Agency Agreement. Article III with some exceptions provides that all monies collected by any of the parties, as royalties, by virtue of release or license, or as damages or settlements for infringements are to be divided less taxes and expenses, eighteen percent to Universal and the balance between the oil companies. Universal's share was to be paid before deduction of licensing agents' commissions.

■ Shields v. Barrow, 17 How. 130, 139, 15 L.Ed. 158, the leading case on the subject, defines indispensable parties as: "Persons who not only have an interest in the controversy but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience."

In United States v. Washington Institute of Technology, 3 Cir., 138 F.2d 25, 26, the consent of one Kear was necessary in order to sell the application or the patent, and the terms for any license and for the design, installation, adjustment or sale of the subject matter of the applications were made subject to his approval. Speaking of Rule 19(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, we said it requires that those having " 'a joint interest shall be made parties * * *.' This means those who were indispensable parties prior to the rules. 2 Moore's Federal Practice (1938) § 19.02." We then held that "A decree for the plaintiff in this suit, if effective, would affect Kear very substantially. He has such a 'joint interest' with the appellee that he must be joined under Rule 19(a)." Citing Nachod & U. S. Signal Co. et al. v. Automatic Signal Corp., 2 Cir., 105 F.2d 981; and Parker Rust-Proof Co. v. Western Union Tel. Co., 2 Cir., 105 F.2d 976.

■ The agreement grants the oil companies such broad general powers regarding the Morrell patent that Universal no longer had an exclusive monopoly over it. They were given important partial control and a definite share in its benefits. A vital element of Universal's patent rights was the ability "to license others to make, use, and vend" the patent. Special Equipment Company v. Coe, 324 U.S. 370, 65 S.Ct. 741, 745, 89 L.Ed. 1006. That right was given to the oil companies, and they could prevent Universal from vetoing the issue of any such licenses. Under Article III, the financial interest of the oil companies was substantial and would be lost if the Morrell patent were held invalid after a trial of this action on the merits. The terms of the agreement make it very clear that a final decree in this cause cannot be had without materially affecting Texaco Development Corporation, Standard Oil Development Company had the Anglo-Iranian Oil Company, Limited, and that in the event their interests were not considered, the result of the litigation would be "wholly inconsistent with equity and good conscience." Shields v. Barrow, supra.

Appellant argues that under Article IV of the agreement having to do with "Litigation and other remedies" paragraph B(d) does not give Anglo-Iranian the right, with the consent of two of the other parties, to bring suit 'for infringement of the Morrell patent in Universal's name. It is claimed that the paragraph is limited to an agreement for the sharing of expenses if any party, with the consent of two other parties, sues for infringement of a patent, and that it conveys no right to any party to sue on the patent of another or in its own name. In view of our holding that the oil companies under the earlier articles of the agreement are indispensable parties, this question is of no moment to the issue and we do not pass upon it.

For its second proposition appellant urges that it is not mandatory under R.S. Section 4915 for notice to or joinder of adverse parties within the statutory time for the filing of the bill in equity. The pertinent part of the section reads: "Whenever a patent on application is refused by the Board of Appeals or whenever any applicant is dissatisfied with the decision of the board of interference examiners, the applicant, unless appeal has been taken to the United States Court of Customs and Patent Appeals, and such appeal is pending or has

been decided, in which case no action may be brought under this section, may have remedy by bill in equity, if filed within six months after such refusal or decision; and the court having cognizance thereof, on notice to adverse parties and other due proceedings had, may adjudge that such applicant is entitled, according to law, to receive a patent for his invention, as specified in his claim or for any part thereof, as the facts in the case may appear."

Appellant argues that the clause following the semi-colon deals with matters that are to take place in the suit subsequent to the filing of the bill; that in the later clause the joining of the "notice to adverse parties" with "other due proceedings," which cannot take place until after suit is filed, naturally and logically means that notice to adverse parties may also take place after suit has been started.

The weight of the reported decisions construing R.S. Section 4915 is to the contrary. In the latest of these, Klumb v. Roach, 7 Cir., 151 F.2d 374, at page 377, certiorari denied 66 S.Ct. 684, the Court said: "It must be remembered that this is not an ordinary equitable action but is predicated solely upon a statutory provision which confers jurisdiction upon the court and fixes the rights of the parties. In order for plaintiff to bring himself within the terms of § 4915 and before the court can adjudicate the rights of the parties, certain things must exist: (1) Plaintiff must have elected to proceed in a District Court rather than by appeal to the United States Court of Customs and Patent Appeals; (2) his complaint must be filed within six months after the decision of the Patent Office; and (3) notice must be given to adverse parties and other due proceedings had. It is our view that these requirements are jurisdictional and the complaint by appropriate allegations must show that the requirements are met; otherwise, the court is without jurisdiction."

In that matter the plaintiff, prior to the litigation, was aware of the interest of the person asserted to be an indispensable party. It was contended as it is on this appeal, "that this being an equitable suit, a court should ignore the provisions of the statute so as to prevent a plain miscarriage of justice." Shell Oil suggests that the Seventh Circuit in saying that within the six months period not only must notice be given to adverse parties but "other due proceedings had," imposed impossible conditions, because a complaint could not be drawn to "allege the other proceedings in the suit which it initiates." That is a palpable overstatement of the Court's language. What other due proceedings, if any, must be attended to within the six months, obviously depends on the circumstances of each case. It will be observed that though the time limitation was the important issue in the Klumb opinion and though it was insisted that the Court was clearly wrong in holding failure to comply with it, a jurisdictional defect—nevertheless certiorari was denied by the Supreme Court

Nachod & U. S. Signal Co. et al. v. Automatic Signal Corporation, supra, also concerned an R. S. Section 4915 action. Plaintiff had not taken proper steps within time to bring in a non-resident exclusive licensee who was held to be an indispensable party. The dismissal of the action was affirmed for that reason. That decision effectively answers the assertions of hardship and inequitable consequences flowing from enforcement of the statutory requirement. In the pending action plaintiff was aware of the rights of the other oil companies under the Alkylation Agreement, so the problem of unknown interests does not arise. In Nachod & U. S. Signal Co. v. Automatic Signal Corp., 105 F.2d at page 983, the Court commenting on that type of situation, said with reference to a plaintiff protecting himself: "He may sue in the district wherein the person who has been held to be the prior inventor resides and promptly examine the latter under Subdivision V, rule 26 et seq., of the new Rules of Civil Procedure for the District Courts of the United States, 28 U.S.C.A. following section 723c, and ascertain whether the interfering applicant or patentee has granted an exclusive license to any one. Upon discovery that an exclusive license is outstanding, he may either bring the licensee

into the pending suit, if the latter is an inhabitant of the district or consents to appear therein, or he may start a new suit in the District of Columbia. While it is true that this would probably require prompt initial action and a vigorous conduct of the litigation by the plaintiff yet such a course of procedure would completely safeguard the plaintiff's right to obtain a patent under Section 4915, if he was entitled to one."

Four months prior to the filing of the Nachod opinion the Second Circuit decided Parker Rust-Proof Co. v. Western Union Telegraph Co., supra. There the Court reversed the decree of the District Court which had dismissed the bill for failure to join an exclusive licensee. This result was reached from the peculiar facts of the case. Speaking of that decision the same Court in Nachod & U. S. Signal Co. v. Automatic Signal Corporation, supra, 105 F.2d at page 982, said: "The conclusion that the presence of the exclusive licensee was not necessary was reached because he knew of the pendency of the suit against the defendant from which he held his license, knew of the plaintiff's ignorance of his interests, and also knew that the defendants, one of them the company of which he was president, instead of promptly filing their answer and setting up the defense that the licensee was an indispensable party to the suit, were obtaining an extension of time to answer and suppressing that special defense until it was too late for the plaintiff to bring suit in the District of Columbia and to obtain jurisdiction over him there by virtue of Title 35 U.S.C.A. § 72a." And see Solomon v. Schlicker, D.C.E.D. N.Y., 58 F.Supp. 444.

The Court of Appeals of the Second Circuit in its Parker opinion, while not recognizing the six months limitation as jurisdictional, relaxed it solely because otherwise the unconscionable tactics of the exclusive licensee would have inequitably put the plaintiff out of court.[3] Even assuming that the statutory bar is not jurisdictional we do not find any circumstances existing in the instant suit to warrant holding that the District Court abused its discretion in applying the limitation. There was no effort either to join Standard and Texaco or, on their part, to appear until a year after defendant's original motion to dismiss and after the District Judge in his opinion had commented that "it is too late now to attempt to join such other parties." Such a claim as this must be properly and promptly prosecuted. The litigation is based on a patent of some public importance. It is made possible by a specific statute. Plaintiff, Texaco and Standard might well not have realized that the latter two companies were indispensable parties though their rights under the agreement were reciprocal; but all three of them did know that those rights were considerable and might be construed so as to bring them within the "adverse party" designation of the statute. Their method of proceeding with respect to R.S. Section 4915 seems to have been carefully chosen. Certainly it was voluntary and deliberate and leaves no justifiable excuse for disturbing the judgment of the District Court. We doubt that plaintiff's failure to comply with the statute is jurisdictional but we are entirely satisfied that in dismissing the complaint the Trial Judge did not abuse his discretion.

Affirmed.

---

[3] Robinson v. Wayne, 78 U.S.App.D. C. 15, 136 F.2d 767, is cited by appellant as allowing an indispensable party to be brought in long after the six months period elapsed. The record in that case shows that in reality all adverse parties were before the court within the statutory time.