HOUDRY PROCESS CORPORATION v. UNIVERSAL OIL PRODUCTS CO.

Civ. No. 713.

United States District Court
D. Delaware.

Nov. 30, 1949.

Arthur G. Connolly, of Wilmington, Del., and Frank S. Busser (Busser & Harding), of Philadelphia, Pa., for plaintiff.

William S. Potter and Daniel F. Wolcott (Southerland, Berl & Potter), of Wilmington, Del., Charles M. Thomas, of Washington, D. C., and M. P. Venema of Chicago, Illinois, for defendant.

RODNEY, District Judge.

This is an R.S. § 4915[1] proceeding in which plaintiff, an unsuccessful applicant in Interference in the Patent Office, seeks to have the court adjudge priority of invention in its favor and against defendant, the successful applicant in Interference in the Patent Office, and prays that the court direct the Commissioner of Patents to issue to plaintiff a patent on the invention.[2]

The matter has been unfortunately delayed as a result of a various number of unavoidable circumstances, for many of which this court was not responsible.

The question before the court at this time may be divided into three separate phases: (1) Whether a third party which has not been joined as a party-defendant is an indispensable part to this suit; (2) if so, must such party be joined within the six months' period provided by R.S. § 4915, i. e., is the six months' provision of R.S. § 4915 jurisdictional; and (3) even if the six months' period is jurisdictional, is this a "special circumstances case" which would justify the court in permitting joinder of the third party after the running of the said six months' period.[3]

The facts giving rise to the present question are relatively short and simple.

On March 8, 1945 the Commissioner of Patents decided the Interference between the applications of plaintiff and defendant by awarding priority in favor of defendant. On August 13, 1945 patent No. 2,382,-239 was issued on the application of defendant.

On August 31, 1945, within six months after the Commissioner of Patents decided the Interference and awarded priority in favor of defendant, plaintiff instituted the present suit. On September 21, 1945, after six months from the date the Commission-er of Patents decided the Interference and awarded priority in defendant's favor, the defendant moved to dismiss this suit or, in the alternative, for summary judgment, on the ground that plaintiff had not joined as a party defendant herein the M. W. Kellogg Company, which company is allegedly an indispensable "adverse party" in this suit, and that the joinder of such Company is barred by the expiration of the six months' period of R.S. § 4915.

Whether or not the M. W. Kellogg Co. is an indispensable adverse party-defendant in this suit depends upon and grows out of an Agreement dated August 7, 1942 between defendant and a number of other corporations, including the M. W. Kellogg Co.[4]

This Agreement appears to be a cross-licensing agreement entered into by the parties thereto pursuant to a recommendation of the Petroleum Administrator for War for the purpose of expediting the research and development of "Catalytic Refining" in the production of motor or other liquid fuels and naphthas. By the terms of the Agreement, Kellogg was severally granted by all of the other parties thereto "for the life of the patents in question a non-exclusive right to grant licenses for Catalytic Refining under their respective Patent Rights." The "Patent Rights" referred to mean patents and patent applications of all countries to the extent that they or the claims thereof cover the process in question and which have been or are acquired by the particular party or parties or are based on inventions conceived and under the control of the particular party or parties prior to the expiration of six months after the termination of the then "present war." Both defendant and Kellogg agreed "diligently to perform their functions as licensing agencies hereunder and to endeavor

---

1. 35 U.S.C.A. § 63.

2. Plaintiff and defendant are referred to as "applicants" in the Patent Office, whereas strictly speaking each party appears to be an assignee of the full and entire right, title and interest to certain and different applications for patent and the inventions thereof. For the purposes of this opinion, however, each party will be referred to as an "applicant".

3. R.S. § 4915, 35 U.S.C.A. § 63, provides, in part, that "Whenever a patent on application is refused * * * or whenever any applicant is dissatisfied with the decision of the board of interference examiners, the applicant * * * may have remedy by bill in equity, if filed within six months after such refusal or decision * * *."

4. Hereinafter referred to as "Kellogg."

to grant licenses for processes of Catalytic Refining as herein provided" and likewise agreed "during the life of the patents in question, to grant as herein provided licenses for processes of Catalytic Refining to each and every applicant therefor."

The Agreement further provides that royalties under licenses granted under the Agreement shall be collected for account of and paid over to the parties thereto in such shares as shall from time to time be determined by agreement or arbitration among the parties thereto. Reference is made in defendant's brief to a "Supplemental Agreement" in which all the parties to the original "Agreement" agreed, inter alia, to a division of royalties, but such "Supplemental Agreement" has not been found as a part of the record and is not alleged to be one of the bases for defendant's motions.

In any event, the so-called "Supplemental Agreement" is relied upon by defendant in its briefs only to show that Kellogg is entitled to receive a portion of the royalties paid under any license granted by it pursuant to the original "Agreement." Plaintiff makes no mention of the so-called "Supplemental Agreement," but merely argues that "the right to receive royalties (apparently in any amount) cannot transmute a pecuniary interest to one of indispensability."

It is not disputed that the patent which was awarded in favor of defendant by the Commissioner pursuant to his decision on Interference is within the term "Patent Rights" as used in the Agreement. In other words, such patent is one under which Kellogg may grant a license pursuant to the Agreement. The question here is whether the rights and power which Kellogg has in connection with such patent are such as to constitute Kellogg an indispensable adverse party-defendant to this suit.

Defendant relies principally upon the case of Shell Development Co. v. Universal Oil Products Co., D.C.Del., 1945, 61 F.Supp. 925, 63 F.Supp. 476, affirmed, 3 Cir., 1946, 157 F.2d 421, in support of its view that Kellogg is an indispensable party to this suit.

Defendant urges that under the Shell case the mere right to receive royalties under a patent license makes one an indispensable party to an R.S. § 4915 proceeding involving the patent. This contention is based upon the argument that in an R.S. § 4915 proceeding the court must pass upon the validity of the patent and if the patent be declared invalid a party having a right to receive royalties under the patent would thereby have a substantial interest detrimentally affected. Defendant argues that inasmuch as Kellogg has the right to receive a portion of the royalties under any license granted by it, the validity of the patent in question is of such paramount importance to it as to make it an indispensable party.

I do not construe the Shell holding as supporting defendant's position. In the Shell case there were factors other than the mere right to receive royalties which the court obviously, and rightly, considered as having an important bearing upon the indispensability of the third party. In that case the rights of the third party stemmed from two agreements under which it received a release for all past infringement of the patent involved, a non-exclusive right to use the process covered by the patent involved, the right to grant releases to others for past infringment of the patent involved, the discretionary right to grant non-exclusive licenses to others—without the consent of the patentee—to use the process covered by the said patent, and the right to share with others in any monies collected by the patentee for any releases or licenses that might be granted.

This District Court in the Shell case pointed out that the foregoing rights placed the third party in a position of partial control of the entire monopoly of the patent, emphasizing that the third party had the right insofar as it decides not to license to exclude others from the grant. It was noted that but for the agreements the patentee would have had the exclusive control of the entire monopoly, and the right of the third party under the agreements to grant or to refuse licenses to others was a vital part of the original grant to the patentee.

The Court of Appeals for this (Third) circuit, in affirming this court in the Shell case, held that the third party was given by the agreements an important measure of control over the patent involved and a definite share in its benefits.

Manifestly the third party in the Shell case had rights in connection with the patent involved which are far in excess of any rights which Kellogg in the instant case might have with respect to the patent involved here. The material right of Kellogg in the instant case which appears to be on a par with any of the rights of the third party in the Shell case is the right to participate in royalties received from licenses granted under the agreement. While this right was indeed considered important in the Shell case, it obviously was deemed so in view of its being linked to the third party's partial control over the monopoly of the patent. As a matter of fact, this court in its opinion in the Shell case pointed out that the right to receive royalties does not transmute a pecuniary interest into one of indispensability; and the Court of Appeals for this (Third) circuit in another case has observed that a partnership in or agreement for division for the proceeds of a patent is not sufficient to make a party indispensable, there being a complete absence in the party of any control over the patent or its use or disposal. United States v. Washington Institute of Technology, Inc., 3 Cir., 1943, 138 F.2d 25, 26.

■ There appears to be no authority expressly supporting defendant's view that the mere right to receive or share in royalties under a patent renders one an indispensable party to an R.S. § 4915 proceeding involving the patent, and I am of the opinion that such right in and of itself is not a sufficient gauge of indispensability.

Defendant further contends, however, that the terms of the Agreement divest defendant of its exclusive monopoly resulting from the grant of the patent involved and vest Kellogg with "an unrestricted right to grant licenses" under such patent. Defendant argues that its own exclusive control of the monopoly of the patent has been extinguished and that it and Kellogg have by the terms of the Agreement been vested with joint control of such monopoly. Defendant therefore urges that besides having a right to share in royalties Kellogg has partial control over the monopoly of the patent and consequently the ruling in the Shell case requires this court to hold Kellogg to be an indispensable party.

If Kellogg does have partial control over the monopoly of the patent, then clearly the Shell case will require this court to adopt defendant's view.

It is difficult, however, to discover any control which Kellogg has over the monopoly of the patent involved here. Under the terms of the Agreement, Kellogg is granted for the life of the patent a non-exclusive right to grant licenses under the patent. But Kellogg also agreed to grant, during the life of the patent, licenses as provided in the Agreement "to each and every applicant therefor." Kellogg likewise has agreed to diligently perform its function as a "licensing agency" and to endeavor to grant licenses as provided in the Agreement.

The Agreement specifies in great detail the provisions which shall be included in the licenses to be granted thereunder and contains forms of licenses as exhibits thereto. The Agreement in a separate paragraph provides that licenses actually granted shall substantially conform to the attached forms. Manifestly Kellogg has no individual discretion as to the terms of the licenses which it will grant pursuant to the Agreement.

Not only is there lack of discretion in Kellogg as to the terms of any licenses, but Kellogg also has a complete lack of power to refuse any applicant a license. Kellogg must grant a license "to each and every applicant therefor." Looking at the actual facts, it appears to be entirely erroneous to say that Kellogg, under the Agreement, has a "right" to grant licenses; rather it seems clear that actually what Kellogg has under the Agreement is a "duty" to grant licenses. Kellogg has no discretion to decide not to license and thereby exclude others from the grant, such as existed in the Shell case, for example. Kellogg must grant licenses to any one and every one who makes application therefor

552

to it. Clearly no control over the monopoly of the patent exists in any degree in Kellogg. The Agreement aptly describes Kellogg as a "licensing agency."

■ The monopoly in a patent is a mere prohibitive power enabling the holder of the monopoly to prevent the practicing or use of the invention by others, except upon such terms and within such limits as he desires. The monopoly also bestows upon its holder the right to recover compensation from those who infringe upon his exclusive rights without his consent. Special Equipment Co. v. Coe, 1945, 324 U.S. 370, 378, 65 S.Ct. 741, 89 L.Ed. 1006; see II Robinson on Patents (1890 Ed.) Secs. 753 et seq., pp. 508 et seq.; Ellis, Patent Assignments and Licenses (2d Ed.) Sec. 54, p. 57.

■ Obviously the Agreement in the instant case gives to Kellogg no right or power to refuse a license to any one. Kellogg has received by the Agreement no part of the monopoly which was held by the owner of the patent. Of course, the monopoly in a patent is indivisible, except as to the territorial area over which it may be exercised; but the indivisible monopoly may reside in one or more persons. II Robinson on Patents (1890 Ed.) Sec. 755, p. 511. Here, however, no part of the indivisible monopoly resides in Kellogg, which has no right to exclude under the Agreement. The Agreement does not bestow upon Kellogg a right, but rather imposes upon Kellogg a duty. If the indivisible monopoly in the patent in question resides in others in addition to the patentee, Kellogg is not one of those others.[5]

■ The indispensability of Kellogg as a party, if such indispensability exists, must result from some interest that Kellogg has in the patent or in the monopoly created

under it. The ordinary or normal methods of transferring interests in a patent are by (1) assignment, (2) grant, (3) mortgage, and (4) license. A grant differs from an assignment merely as to the geographical area covered by the agreement. Clearly the interest of Kellogg is not that of mortgagee, and since no right is given to Kellogg to make, use or sell the subject matter of the patent, he can scarcely be called a licensee. Any rights in the patent or in the monopoly must therefore grow out of a relationship similar to that of an assignee.

■ Two clear rights in the patent monopoly usually constitute criteria by which may be determined whether an assignment of rights under the patents exists and these rights are (1) the right to prohibit the making, use or sale of the invention by others except upon such terms as the patentee may deem expedient, and (2) to maintain infringement proceedings for the unauthorized making, use or sale of the subject matter of the patent or to obtain compensation for such wrongful conduct.

Applying these criteria to the present case and in reverse order, it is apparent that Kellogg is given no power to maintain infringement proceedings for the unlicensed use of the pertinent patent or to recover compensation for such unauthorized use. Similarly, Kellogg is given no right to prohibit any making, use or sale by others under the patent or to formulate any terms by which such use should be governed. The agreement by which all of Kellogg's interests exist constitutes Kellogg a non-exclusive licensing agent requiring it to issue licenses to any one who applied therefor according to the agreed forms of licenses and for stipulated royalties. Kellogg in the actual issuance of the licenses was simply the agent of Universal and had no right to refuse to issue such licenses.[6]

5. The Agreement provides that nothing in it "shall be construed to limit or restrict in any way the right of any of the parties hereto freely to grant directly or indirectly * * * any license or other right or privilege under or in respect of its own patents on such terms and conditions as it shall determine." This provision would seem to reserve to defendant the final and complete control over

the monopoly of its patent, irrespective of anything else in the Agreement to the contrary.

6. In Chemical Foundation, Inc. v. E. I. duPont deNemours and Co., D.C., 29 F.2d 597, and in Preload Enterprises, Inc. v. Pacific Bridge Co., D.C.Del., 1949, 86 F.Supp. 976 it was said that a license can be granted only by one who

The monopoly under the patent which Universal enjoyed was the right to require every one to obtain licenses before using the patent. This monopoly remained in Universal the entire time that Kellogg issued the licenses and to the same extent as if its licenses had been issued by Universal itself instead of by Kellogg. No part of this monopoly was granted to Kellogg. All Kellogg could do was to issue licenses to every applicant and upon terms which were not dictated by Kellogg. Kellogg's only shown interest was a duty to issue the licenses and a right to some undetermined compensation for its labor or services in issuing such licenses. If a right to receive royalties or compensation does not transmute such pecuniary interest into indispensability,[7] then it is impossible to see how Kellogg was indispensable.

 The foregoing compels me to hold that Kellogg is not an indispensable party-defendant to the instant suit. Kellogg clearly does not come within the terms of the test of indispensability as laid down long ago in the celebrated case of Shields v. Barrow, 17 How. 130, 139, 15 L.Ed. 158, where it was held that indispensable parties were "Persons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience."[8]

The motion of the defendant to dismiss, or in the alternative, for summary judgment must be denied.[9] No disposition is made herein of any motion concerning the amendment to the complaint joining Kellogg as a defendant, because it has been intimated that plaintiff would not press such amendment if Kellogg were found not to be indispensable.

The determination that Kellogg is not indispensable also renders unnecessary any consideration of the interesting questions of whether the six months' provision of R.S. § 4915 is jurisdictional and even if it is, whether or not this is a "special circumstances" case which would justify the court in ignoring the six months' period.

---

owns or has an interest in the property affected by the license. Of course those cases contemplated the issuance as a "right" and not the issuance as a "duty" by a duly designated agent designated for that express and sole purpose.

7. United States v. Washington Institute of Technology, 3 Cir., 138 F.2d 25, 27.

8. The rights of the third parties in the cases of Parker Rust-Proof Co. v. Western Union Tel. Co., 2 Cir., 105 F.2d 976, and United States v. Washington Institute of Technology, 3 Cir., 138 F.2d 25, gave to them control over the monopolies of the patents involved, and therefore they met squarely the Shields v. Barrow test.

9. The ground for either alternative motion is the failure to join an indispensable party and the bar to joinder thereof after the running of the six months' period. The recent amendment to Federal Rules of Civil Procedure, Rule 12 (b), 28 U.S.C.A., provides for a motion to dismiss upon the specific ground of failure to join an indispensable party. See Rule 12(b) (7). The motion in the instant case, however, was filed prior to the aforesaid amendment.