### In re BURNELLI.

Patent Appeal No. 2205.

Court of Customs and Patent Appeals.
March 19, 1930.

Hartwell Balcam, of Washington, D. C. (Frederick W. Barker and W. H. Swenarton, both of New York City, of counsel), for appellant.

T. A. Hostetler, of Washington, D. C. (Edwin L. Garvin, of New York City, of counsel), for the Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the Patent Office affirming the decision of the primary examiner finally rejecting claims 1, 3, 4, 5, 9, 19, and 20 of appellant's application. Upon the argument before us, appellant waived claims 3, 5, and 9, leaving for our consideration claims 1, 4, 19, and 20, which read as follows:

"1. An airplane having a central supporting element having aerofoil contour, said element constituting a fuselage, to enclosingly contain the complete load, the width of said element being uniform from its leading edge to a point near its rear edge, and its length extended to the empennage to accord longitudinal stability to the airplane."

"4. An airplane whose body portion enclosingly contains the full power equipment and useful load, said body portion having aerofoil contour throughout with its length extended to the empennage for longitudinal stability, to thus constitute an aerodynamically efficient supporting element, and complementary supporting elements extended from opposite sides of said central element."

"19. An airplane having an aerofoil element in fuselage form, with its length extended to the empennage for longitudinal stability, said aerofoil fuselage including frame longerons and having means of accommodation for engines, pilots, load and passengers, and bulkheads separating said means of accommodation, with means of intercommunication, said bulkheads comprising compression members in association with said longerons.

"20. An airplane having an aerofoil element in fuselage form, with its leading edge of full width and its length extended to the empennage for longitudinal stability, complementary side aerofoils and landing gear secured and trussed solely to said aerofoils and landing gear secured and trussed solely to said aerofoil-fuselage."

The references cited and relied upon are: Hayot, 976,876, November 29, 1910; Bourbeau et al., Fr., 431,862, November 22, 1911; Junkers, 1,114,364, October 20, 1914.

The claimed invention rests in the provision of an airplane body or fuselage whose length extends out to the empennage which it supports, whose width is uniform from the leading edge to near its rear edge, said body portion having aerofoil contour throughout.

Appellant contends that the fuselage described in his specification is new and useful, in that its aerofoil contour constitutes it a wing or supporting element which, being hollow and of large capacity, can contain the power plants, fuel, and useful load, and its extended length and ample width have the effect of importing into the airplane a high degree of longitudinal stability.

The Board of Appeals rejected claim 1 upon all three of the references; claim 4 upon Junkers, in view of Bourbeau and Hayot; claim 19 upon Junkers; and claim 20 upon Hayot.

Appellant contends that patentability should not be denied because a part of his structure is found in one prior patent, another part in another prior patent, and still another part in a third patent, and cites many cases in support of his contention.

Assuming, without deciding, that appellant's structure, as described in his specification, is a patentable combination, as distinguished from an aggregation of parts, we are confronted with the question of whether his claims are too broad to be allowable. This turns upon the meaning of the words "aerofoil," "aerofoil fuselage," and "aerofoil contour" used in the claims and specification here in issue.

Appellant insists that "aerofoil contour" refers not alone to the contour of the surfaces of the fuselage, but includes the production of a useful dynamic reaction, and that, unless the structure has a greater lift than drag, it is not considered in the aeroplane art as an aerofoil. In support of this contention, appellant submits a definition of aerofoil adopted by the National Advisory Committee for Aeronautics, as follows: "Air Foil—Any surface designed to be projected through the air in order to produce a useful dynamic reaction."

Counsel for the Commissioner of Patents, on the other hand, contends that the word "aerofoil" must be given its common meaning, and quotes Funk & Wagnalls Dictionary, 1927 Ed., defining aerofoil as "any sustaining surface."

We think that, if there be any difference in the two quoted definitions, we must accept the dictionary definition quoted by counsel for the Patent Office. However, we think both definitions relate only to the surface of a structure, and not to its dimensions.

If the element of relative width and height, as well as contour of the surfaces, of a structure be an essential part of appellant's invention, then he has not described it in his claims by the use of the word "aerofoil," as that word is commonly understood.

Appellant asserts that the relative height and width of the fuselage is an essential part of his invention. In his brief he states:

"As will be noted from the drawing (Fig. 3), the width of the airfoil-fuselage is considerably greater in extent than its height. It is by this means that efficient lift or supporting effect is obtained, for the airfoil-fuselage thereby becomes a true wing or supporting element, because substantial upper and lower surface areas are provided without exceeding the height or thickness comprised in a true airfoil contour."

We agree with counsel for the Patent Office that Hayot discloses a fuselage extending to the empennage, and that it forms a substantial "sustaining surface" or an "aerofoil." It may be true, as appellant contends in his brief, that, because of its spindle shaped fuselage, it being for the most part greater in height than in width, "aerodynamically, the head resistance or drag offered by the Hayot spindle shaped body would exceed the meagre lift it would provide; * * * *" but appellant's claims, if allowed, would clearly cover a fuselage having greater height than width. In other words, two fuselages might have exactly the same aerofoil contour, one useful in dynamic reaction because of greater width than height and the other having little dynamic reaction because of greater height than width.

The relative dimensions of the fuselage being an essential element of appellant's structure, or, in other words, it being conceded that there is no invention by appellant without the factor of said dimensions, appellant's claims are too broad because in none of them is this essential element expressed.

■ It is well established that "any claim which is broader than the described invention is void; even where that invention is valuable and could have supported a valuable claim. * * * *" Walker on Patents (6th Ed.) § 220, and cases cited.

So in this case, assuming it to be true that, because the drawings which are a part of the specification disclose that appellant's fuselage is of greater width than height, invention is disclosed in the specification, none of the claims contain this limitation, and they are therefore broader than the described invention.

While insisting that the term "aerofoil" includes the factor of relative dimensions of the fuselage, appellant suggests that we recommend to the Patent Office the allowance of an amendment to the specification by inserting a definition of the term "aerofoil" as used therein, and the allowance of an additional claim, to be numbered 21, and reading as follows:

"21. An airplane having a central, aerodynamically efficient supporting element which constitutes a fuselage of aerofoil contour throughout, whose width is considerably greater than its height throughout substantially the entire length thereof and whose upper and lower surfaces are transversely rectilineal, the upper surface being generally convex longitudinally and of considerably greater length than its lower surface, said fuselage containing a power plant enclosed in the forward portion thereof, propeller shafting projecting thru the leading edge of the fuselage of said shafting and operatively connected to said power plant and propeller means carried by said shafting and disposed in front of the leading edge of the fuselage."

■ Appellant has furnished us with citations of authority where similar recommendations have been made by the Court of Appeals of the District of Columbia, when it exercised jurisdiction over Patent Appeals. We have examined the authorities cited, and find that such recommendations have been made only in cases where that court found error upon the part of the Patent Office, and reversed the decision appealed from for that reason. We do not think we can make any recommendations to the Patent Office in any case where no error is found to have been committed by it.

The decision of the Board of Appeals is affirmed.

Affirmed.