**PAPER CONTAINER MFG. CO. v. DIXIE CUP CO.**

No. 9546.

United States Court of Appeals Third Circuit.

Argued June 24, 1948.

Decided Aug. 26, 1948.

Rehearing Denied Oct. 11, 1948.

Thomas Cooch, of Wilmington, Del. (Marvel & Morford, of Wilmington, Del., and Franklin M. Warden and Cromwell, Greist & Warden, all of Chicago, Ill., on the brief), for appellant.

Max R. Chambers, of Chicago, Ill. (William H. Foulk, of Wilmington, Del., and Charles F. Meroni, Carlton Hill, and The Firm of Charles W. Hills, all of Chicago, Ill., on the brief), for appellee.

Before BIGGS, Chief Judge, and McLAUGHLIN and O'CONNELL, Circuit Judges.

BIGGS, Chief Judge.

Paper Container Mfg. Company, the appellant, and Dixie Cup Company, the appellee, were in interference in the United States Patent Office upon the respective applications of Hulseman and Carew. The applications of the two inventors had been previously assigned by them to the parties herein. Priority of invention was awarded Dixie Cup on Carew's application by the Board of Interference Examiners on July 11, 1946. On January 2, 1947, Paper Con-

tainer brought suit in the court below against Dixie Cup to obtain a patent under R.S. § 4915, 35 U.S.C.A. § 63. Dixie Cup filed a motion to dismiss under Federal Rules of Civil Procedure, rule 12(b), 28 U.S.C.A., on the ground that the court below lacked jurisdiction of the subject matter because the suit was not being prosecuted by the real party in interest, Reconstruction Finance Corporation. RFC, while the interference was pending, had made a loan to Paper Container and had received as security an assignment of the Hulseman application. This assignment was duly recorded in the Patent Office. A hearing was had on Dixie Cup's motion to dismiss in the court below but before its determination Paper Container filed an amendment to its complaint under Rule 15(a) which purported to join RFC as a party plaintiff. Dixie Cup moved to strike the amendment. It was stipulated that the court should consider both motions upon the hearing had and the authorities subsequently cited. The court dismissed the complaint for the reasons stated in its opinion. See 74 F.Supp. 389. The appeal at bar followed.

The assignment executed by Paper Container to RFC, after recitals respecting the amount of the loan and the terms for its repayment, states that as security the assignor, Paper Container, does sell, assign and transfer to RFC "all right, title and interest of the Assignor in and to" the Hulseman application.[1] The assignment further provides that Paper Container should have certain "licenses, rights, and privileges" and by the same instrument Paper Container entered into certain covenants with RFC, all as set out in the footnote.[2] It will be observed from an examination of the reservations that Paper Container (reservation (a)) reserved a "per-

---

[1] Other patents and applications were also assigned by the same instrument but these need not be detailed in this opinion.

[2] The licenses, rights and privileges reserved to Paper Container and the covenants entered into by it with RFC under the assignment in pertinent part are as follows:

"This assignment is made upon the understanding that the Assignor reserves and shall have the following licenses, rights, and privileges, so long only as the Assignor shall punctually and fully pay and discharge, when and as payment or discharge thereof shall be due, all obligations and agreements made by the Assignor to or with R. F. C. (including but not limited to said Note and all mortgages and other agreements securing said Note or otherwise given in connection with said loan), and until R. F. C. shall give notice of its election to terminate said reservations for failure so to pay and discharge said obligations and agreements, to wit:

"(a) A personal non-exclusive, non-assignable and royalty-free right and license in the Assignor to make, use and vend the subject matter of said Letters Patent set forth in Schedule 'A' and applications for Letters Patent and patents issuing thereon set forth in Schedule 'B', hereunto annexed.

"(b) The right at the sole charge and expense of the Assignor to bring suit for infringement against infringers of said Letters Patent or any of them in the name of Assignor and of R. F. C. as complainants, provided consent of R. F. C. be first obtained upon written request by Assignor, and if such request be not denied within ninety (90) days after receipt thereof by R. F. C. then consent shall be presumed.

"(c) That no other license under said Letters Patent, applications for Letters Patent, or any of them, shall be granted by R. F. C. to any other party or parties to engage in the manufacture or sale of products or articles or the use of methods or processes directly competitive with the products, articles and methods of Assignor without the approval in writing of the Assignor.

*    *    *    *    *    *    *

"The Assignor hereby covenants with R. F. C.:

"1. That Assignor has made no assignments of any of said Letters Patent or any of said applications for Letters Patent more particularly described in Schedules 'A' and 'B' or any of the rights to them thereby or of any of the inventions disclosed, described or claimed therein or made any application for any reissue thereof; that it knows of no defect in its title thereto; that there are no suits or actions commenced or threatened against it with reference thereto; and that it has granted no license, shopright, or privilege therein or in connection therewith (except as listed in Schedule 'C' annexed hereto).

"2. That Assignor shall promptly notify R. F. C. of any suit for infringement

sonal, non-exclusive, non-assignable, and royalty-free right and license to make, use and vend the subject matter" of the Hulseman application [3] but that none the less (reservation (c)) RFC agreed that it would not license any person to engage in the manufacture of any product "directly competitive" with that of Paper Container without the latter's approval in writing. It follows that, although the license reserved to Paper Container is designated in the assignment as a "non-exclusive license", it is a good deal more than that and comes close to being an exclusive license, defeasible only by Paper Container's failure to repay the loan in accordance with its terms or to observe the other covenants of the assignment. Reservation (b) provides that Paper Container has the right to bring suit against any patent infringer

(see note 1 *supra*) in its own name and in the name of RFC as complainants, upon procuring permission from RFC, the latter's consent to be presumed upon written request not denied within ninety days by RFC.

The covenants, (1) to (7) inclusive, referred to above, need not be discussed in detail. It is sufficient to state that covenant (4) states that Paper Container shall notify RFC of any interference in the Patent Office in respect to any application covered by the assignment, shall prosecute interferences at its own expense, and upon RFC's request shall grant associate powers of attorney to any attorney designated by the latter to prosecute the application to a final conclusion "in the United States Patent Office and all Appellate Tribunals". Covenant (5) provides that Paper Contain-

brought against it and shall promptly furnish R. F. C. with a copy of the bill of complaint in any such suit and keep R. F. C. advised of the progress of such suit and promptly furnish R. F. C. with a copy of any decree or final order entered in any such suit.

"3. That Assignor shall promptly notify R. F. C. of any application for reissue of any of said Letters Patent and, shall, upon request of R. F. C. authorize the duly designated attorneys or representatives of R. F. C. to inspect the files of any such reissued application, and shall, upon request of R. F. C., give associate powers of attorney to any attorney or attorneys designated by R. F. C. to prosecute such application for reissue thereof to a final conclusion and shall pay all charges and disbursements of the prosecution and obtaining of such reissued Letters Patent incurred by R. F. C.

"4. That Assignor shall promptly notify R. F. C. of any interference or other proceeding in the United States Patent Office involving any of said Letters Patent or applications for Letters Patent now owned or hereafter acquired by it, and shall at its own expense prosecute any such interference and proceeding and shall, upon request of R. F. C., grant associate powers of attorney to any attorney or attorneys designated by R. F. C. to prosecute said interference or proceeding in the United States Patent Office and all Appellate Tribunals to a final conclusion and shall pay all charges and disbursements of the prosecution of such

interference or proceeding incurred by R. F. C.

"5. That Assignor agrees at its own expense diligently to prosecute all said applications for Letters Patent now owned or hereafter acquired by it, in the United States Patent Office and Appellate Tribunals, to pay the final fees and other disbursements in connection therewith, and not to permit any abandonment of said applications without the written consent of R. F. C.

"6. That the Assignor shall, upon request of R. F. C., give to R. F. C. or the attorneys and representatives selected by it, power to inspect the files of any such applications in the United States Patent Office, and shall upon request of R. F. C. furnish copies of papers filed or to be filed in any of said applications, and shall give associate powers of attorney to attorneys selected by R. F. C. to prosecute such applications in the United States Patent Office and all Appellate Tribunals to a final conclusion. Any expense incurred by R. F. C. in the prosecution of any of said applications shall be chargeable against the Assignor.

"7. That Assignor shall mark or cause to be marked all articles, devices and machines made or sold by it, covered by any of said Letters Patent which have been granted or when granted upon any of said applications, with the word 'Patented' and the number of any such patent or patents applicable thereto, as required by law."

[3] The subject of the application was a "Cup Holder".

er shall diligently prosecute all applications "in the United States Patent Office and Appellate Tribunals" and will not abandon any application without RFC's written consent. Covenant (6) states that Paper Container upon RFC's request shall give to it or to its attorneys power to inspect the files of any application in the Patent Office, shall furnish copies of papers filed in respect to the applications and also shall give associate powers of attorney to any attorney selected by RFC to prosecute any application "in the United States Patent Office and all Appellate Tribunals" to a final conclusion, expenses incurred by RFC in the prosecution of any application to be chargeable to Paper Container.

■ If the clause "Appellate Tribunals" referred to in covenants (4), (5) and (6) be given strict construction it might be held that the reference was not intended to include a district court of the United States sitting in an R.S. § 4915 proceeding but was designated to embrace only the United States Court of Customs and Patent Appeals, as an administrative tribunal [4] of the Patent Office, and the Supreme Court of the United States, whence appeals lie ultimately from the decisions of the Patent Office. We think, however, that it was the intention of the parties to include a district court of the United States sitting "in review" [5] of the refusal of the Patent Office to grant a patent in an R.S. § 4915 proceeding within the phrase *appellate tribunals* as used in the covenants.[6] Covenant (5) provides expressly that Paper Container shall prosecute applications in the Patent Office and before appellate tribunals. The language of the so-called "abandonment clause" of covenant (5) [7], indicates that Paper Container and RFC agreed implicitly that Paper Container alone and in its own name should prosecute applications, such as Hulseman's. Compare the provisions of reservation (b) that suits for infringement should be prosecuted in the names of both Paper Container and RFC.[8] Obviously it' was not the intention of RFC to take part in proceedings in the Patent Office in its own name as assignee but to leave such proceedings to be prosecuted by Paper Container as assignee of Hulseman. The respective rights and standings of Paper Container and RFC must be determined by the terms of Paper Container's assignment to RFC. The

---

[4] See In re Burnelli, 1930, 38 F.2d 891, 893, 17 C.C.P.A., Patents, 918. *Vide*, Postum Cereal Co. v. California Fig Nut Co.; 272 U.S. 693, 698, 699, 47 S. Ct. 284, 71 L.Ed. 478.

[5] See Morgan v. Daniels, 153 U.S. 120, 124, 14 S.Ct. 772, 773, 38 L.Ed. 657. "But this is something more than a mere appeal. It is an application to the court to set aside the action of one of the executive departments of the government." New evidence may be offered, as distinguished from the record in the Patent Office, in an R. S. § 4915 proceeding. See also Minnesota Mining & Mfg. Co. v. Carborundum Co., 3 Cir., 155 F.2d 746, 748, 749, and General Talking Pictures Corp. v. American Tri-Ergon Corp., 3 Cir., 96 F.2d 800, 812.

[6] In some of the leading cases under R.S. § 4915, the proceedings are referred to as if they were continuations of applications for patents. See Gandy v. Marble, 122 U.S. 432, 439, 7 S.Ct. 1290, 30 L.Ed. 1223; Butterworth v. Hoe, 112 U.S. 50, 62, 55 S.Ct. 25, 28 L.Ed. 656; Becker v. General Chain Co., 1 Cir., 273 F. 419, 422 and Central Ry. Signal Co. v. Jackson, D.C., 254 F. 103, 105.

[7] If RFC was intended to be the plaintiff or co-plaintiff in the prosecution of an application the written consent of R FC required by covenant (5) would be unnecessary for RFC would be the party *acting*, not *giving consent* to another's action.

A substantially similar argument can be made in respect to covenant (3).

[8] The provisions of reservation (b) may have been unnecessary. Cf. Independent Wireless Tel. Co. v. Radio Corp. of America, 269 U.S. 459, 469, 46 S. Ct. 166, 169, 70 L.Ed. 357, in which it was said: "It seems clear, then, on principle and authority, that the owner of a patent, who grants to another the exclusive right to make, use, or vend the invention, which does not constitute a statutory assignment, holds the title to the patent in trust for such a licensee, to the extent that he must allow the use of his name as plaintiff in any action brought at the instance of the licensee in law or in equity to obtain damages for the injury to his exclusive right by an infringer, or to enjoin infringement of it." It is probable that Paper Container might have been authorized as a matter of law to prosecute suits for infringement in the names of Paper Container and RFC without express authorization from RFC to do so.

indication is clear that both RFC and Paper Container understood and agreed that Paper Container should prosecute the Hulseman application to a final conclusion.

On examination of the reservations granted to Paper Container by RFC and the covenants of the assignment, we cannot say, as Dixie Cup contends, that under Waterman v. Mackenzie, 138 U.S. 252, 11 S.Ct. 334, 34 L.Ed. 923, that Paper Container is a mere non-exclusive licensee under the Hulseman application and for that reason had no right to institute the action at bar or that RFC is the only real party in interest, an indispensable party that alone was entitled to institute and maintain the instant suit. The Supreme Court in the Waterman case recognized that the assignor of a patent by an assignment couched in general terms consummates an act "equivalent to delivery of possession" of corporeal property and makes the title of the assignee "complete towards all other persons, as well as against" the assignor, but the Court added the qualifying phrase "unless otherwise provided in the mortgage". 138 U.S. at page 260, 11 S.Ct. at page 337, 34 L.Ed. 923. The qualifications in the assignment in the case at bar are substantial and, in our opinion, are sufficient to constitute Paper Container as a real party in interest, an indispensable party. Shields v. Barrow, 17 How. 130, 139, 15 L.Ed. 158; United States v. Washington Institute of Technology, D.C. Del., 47 F.Supp. 384. It follows that both Paper Container and RFC are indispensable parties.

We turn now to the provisions of R.S. § 4915 to determine how they should be applied under the circumstances at bar. The section, in pertinent part, states: "Whenever a patent on application is refused by the Board of Appeals or . . . whenever any applicant is dissatisfied with the decision of the board of interference examiners, the applicant * * * may have remedy by bill in equity, if filed within six months after such refusal or decision; and the court having cognizance thereof, on notice to adverse parties and other due proceedings had, may adjudge that such applicant is entitled, according to law, to receive a patent for his invention * * *." The question is: Can Paper Container a-lone, without RFC, be deemed to be an "applicant" within the phrase "any applicant" as used in the statute?

The *locii standi* of Paper Container and RFC created by the terms of the assignment are anomalous. Each has a substantial interest in the Hulseman application and those interests are in a sense indivisible or, at least, joint. RFC is interested in having the application prosecuted to fruition. If this is not accomplished RFC's security for its loan to Paper Container will be correspondingly decreased. Paper Container's interest is substantially similar to that of RFC. If the Hulseman application is not prosecuted to a successful conclusion Paper Container will lose an asset which it expects (on repayment of the loan to RFC) to recapture in toto. RFC's interest is surely not "adverse" to that of Paper Container, nor is that of Paper Container "adverse" to the interest of RFC. The "adverse parties" referred to in R.S. § 4915 are clearly the "adverse parties" of the interference proceedings or those claiming under them. Compare the circumstances attendant on our decision in Shell Development Co. v. Universal Oil Products Co., 3 Cir., 157 F.2d 421, 424, 425, and in Nachod & United States Signal Co. v. Automatic Signal Corp., 2 Cir., 105 F.2d 981; in Parker Rust-Proof Co. v. Western Union Tel. Co., 2 Cir., 105 F.2d 976, and in Klumb v. Roach, 7 Cir., 151 F.2d 374, 377, cert. den. 327 U.S. 784, 66 S. Ct. 684, 90 L.Ed. 1011. Both Paper Container and RFC are in a position analogous to that of joint inventors who have filed an application in the Patent Office; or, perhaps, more accurately, Paper Container and RFC are in a position like that of two assignees to whom a joint and indivisible interest in an application has been assigned by the inventor, and one of whom now seeks to prosecute the application to fruition by securing a patent.

Suppose, to amplify the example contained in the previous paragraph, A and B are assignees of a patent application and the Board of Interference Examiners has awarded priority of invention to the application of party X in an interference proceeding. A desires to prosecute the application in an R.S. § 4915 proceeding but B, believing the decision of the Board to

338

have been correct, desires to avoid the expense of any further action or litigation. By his refusal to join as a party plaintiff could he prevent A from maintaining an R. S. § 4915 action in the district court? We are of the opinion that he could not. We think that B would have to allow A to use his name on analogy to the principle enunciated by Mr. Chief Justice Taft in Independent Wireless Tel. Co. v. Radio Corp. of America, 269 U.S. 459, 469, 46 S.Ct. 166, 70 L.Ed. 357. Under the circumstances of the instant case Paper Container and RFC are in legal effect trustees for each other. But the statement just made begs the question to some degree for Paper Container did not attempt to make use of RFC's name in the instant suit or attempt to join it as a party plaintiff within the six months prescribed by the statute.

R. S. § 4915, however, expressly provides that, "any applicant" may institute suit. Prior to the amendments effected by the Act of August 5, 1939, 53 Stat. 1212, the critical words were "the applicant". See 44 Stat. 1336.[9] We have been unable to discover any legislative history or any decided case which throws light on the reason why the word "any" was substituted for "the" by the 1939 amendment.[10] The Rules of Practice of the Patent Office, 35 U.S.C.A., Appendix, as amended subsequent to the changes in the Act seem to reflect no pertinent modification. Rule 133 still speaks of "every applicant for a patent, * * *"[11] as if two or more inventors joining in a single application for a patent were an "applicant" within the purview of the rule. But the amendment may not be

assumed to be meaningless and may well represent a Congressional intent to cause the statute to reflect modern circumstances where two or more persons frequently work together to make a single invention or where the application, when filed in the Patent Office often is assigned to a group or syndicate which possess a joint interest in it. Any of the persons in the categories designated might desire to prosecute an application to final determination. Under this interpretation of the statute we must conclude that Paper Container must be deemed to be an "applicant" within the purview of the phrase "any applicant" of R.S. § 4915.

But if the statute now used the phrase "the applicant" as it did prior to the 1939 amendment, we would still be of the opinion that Paper Container would be an "applicant" within the meaning of the Act. RFC's title is merely for security. As is indicated by the assignment it was the intention of both RFC and Paper container that Paper Container should prosecute the Hulseman application to final determination in the Patent Office and before the appropriate appellate tribunals. The court below was sitting as a court of equity under the terms of R.S. § 4915.[12] The standing of Paper Container to pursue the Hulseman application as an "applicant" was conferred upon it by the terms of the assignment as we have pointed out.[13] In a realistic sense Paper Container would be "the applicant" under R.S. § 4915 as it stood prior to the 1939 amendment for RFC is interested only in maintaining its security.[14] True, the assignment will not

---

[9] See also 16 Stat. 205, § 52, Act July 8, 1870, which refers to "the applicant". Cf. 27 Stat. 436, § 9, Act Feb. 9, 1893, which refers to "any party aggrieved".

[10] The reasons for certain other changes effected in the statute by the 1939 amendments are set forth in 2 Walker on Patents, Deller's Ed., 1948 Supp. Section 214.

[11] See Rules of Practice in the United States Patent Office, 2 Walker on Patents, Deller's Ed., at p. 1011.

[12] "A court of equity looks at the real object and intention of the conveyance. * * *" Hughes v. Edwards, 9 Wheat. 489, 495, 6 L.Ed. 142.

[13] Dixie Cup's defense is reminiscent of the attempt of the defendants in eject-

ment suits to maintain as a defense the title of an outstanding mortgagee. This they cannot do. 18 Am.Jur.Ejectment § 55, and the authorities in note 14 cited to the text. The analogy is apposite although in the instant suit Paper Container seeks to try title in an invention, not in land. Dixie Cup seeks to avoid this issue.

[14] Lord Mansfield put the matter succinctly when he said in the case of The King against the Inhabitants of St. Michael's in Bath, Vol. II Douglas reports 630, 632 (Reprint Vol. 99, p. 399) that "It is an affront to common sense to say that the mortgagor is not the real owner."

serve to enlarge the jurisdiction of the statute but the standing of a party as "the applicant" under the statute would of necessity be determined by the attendant pertinent circumstances in every case and is here settled by the terms of the assignment. We conclude, therefore, that Paper Container fulfilled the requirements of R.S. § 4915 (which we assume to be jurisdictional) when it brought suit against the adverse party, Dixie Cup, in the court below within six months of the decision of the Board of Interference Examiners.[15]

The legal fact remains, as we have stated, that RFC is an indispensable pary and that the suit at bar cannot proceed to a conclusion without its being joined as a party. Paper Container has endeavored to effect this by filing the amendment referred to in the first paragraph of this opinion. As we apprehend the record the court below did not pass directly upon the question of the propriety of the amendment filed under Rule 15(a) but simply dismissed the complaint. The record shows that RFC has consented to join the suit as a party plaintiff by its letter of May 23, 1947. Whether that joinder be made by way of an amendment under Rule 15(a) or by motion under Rule 21 seems to us to be immaterial but the proper course of joinder must be determined by the court below upon remand.

In conclusion we should point out that it makes no legal difference to Dixie Cup whether Paper Container or RFC is the real and therefore indispensable party in interest or whether both are real and indispensable parties. Upon answer filed and hearing Dixie Cup will have its day in court and whether a patent be issued to Paper Container or to RFC or to both of them, if any patent can issue on the Hulseman application, is a matter of no legal import to Dixie Cup. The judgment will

be binding alike on Paper Container, RFC, and Dixie Cup.[16]

The remaining points raised by the parties do not require discussion.

The judgment of the court below will be reversed and the cause will be remanded with the direction to reinstate the complaint and to proceed with the case in accordance with this opinion.

---

[15] The situation would be otherwise if RFC and not Dixie Cup was the adverse party. See Shell Development Co. v. Universal Oil Products Co., 3 Cir., 157 F.2d 421; Nachod & United States Signal Co. v. Automatic Signal Corp., 2 Cir., 105 F.2d 981; Parker Rust-Proof Co. v. Western Union Tel. Co., 2 Cir., 105 F.2d 976 and Klumb v. Roach, 7 Cir., 151 F.2d 374, cert. den. 327 U.S. 784, 66 S.Ct. 684, 90 L.Ed. 1011. If

such had been the case, assuming the provisions of R.S. § 4915 to be jurisdictional, RFC would have had to have been made a party within the six month period.

[16] Whether or not the decision of the court below might or might not be binding upon RFC, even in the absence of joinder, is a question which we need not determine on the record in the instant case.