INCYTE PHARMACEUTICALS, INC., and the Board of Trustees of the Leland Stanford Junior University, Plaintiffs,

v.

AFFYMETRIX, INC., Defendant.

No. C 99–21111 JF EAI.

United States District Court, N.D. California, San Jose Division.

Sept. 8, 2000.

Robert P. Taylor, Howrey Simon Arnold & White LLP, Menlo Park, CA, Bradley J. Olsen, Howrey Simon Arnold & White LLP, Washington, DC, Teresa M. Corbin, Howrey Simon Arnold & White LLP, Menlo Park, CA, for Plaintiffs.

Morgan Chu, Jeffrey L. Arrington, Richaed De Bodo, Richard de Bobo, Brian Ledahl, Irell & Manella LLP, Los Angeles, CA, William L. Anthony, Elizabeth A. Howard, Craig R. Kaufman, Orrick Herrington & Sutcliffe LLP, Menlo Park, CA, for Defendants.

## ORDER DENYING MOTION TO DISMISS

FOGEL, District Judge.

Defendant Affymetrix, Inc. ("Affymetrix"), moves for dismissal of the first amended complaint for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). Plaintiffs Incyte Pharmaceuticals, Inc. ("Incyte"), and the Board of Trustees of the Leland Stanford Junior University ("Stanford") oppose the motion. The Court has read the moving and responding papers and has considered the oral arguments of counsel presented on July 10, 2000. For the reasons set forth below, the motion will be denied.

## I. BACKGROUND

In March 1995, Stanford and Synteni, Inc. ("Synteni"), entered into an agreement whereby Stanford granted Synteni an exclusive license to make, use and sell products covered by, inter alia, certain patents and patent applications. Stanford also granted Synteni the right to grant sublicenses at its discretion and without consent from Stanford. Both Stanford and Synteni had the right to institute infringement actions involving licensed patents, but each was required to provide notice to the other, which had the option to join in the proceedings.

In August 1995, Patrick Brown and Dari Shalon ("Brown et al.") filed U.S. patent application serial no. 08/514,875 ("the '875 application"), entitled "Method and Gene-Array Device for Analyzing Gene Expression Patterns." In July 1996, Brown et al. filed U.S. patent application serial no. 08/688,488 ("the '488 application"), entitled "Method for Determining the Relative Abundance of Polynucleotide Sequences."

These applications came within the scope of the exclusive license agreement.

Incyte acquired Synteni in January 1998, at the same time acquiring all of Synteni's rights and obligations under Synteni's agreement with Stanford. In October 1998, Stanford granted an associate power of attorney in the '875 and '488 applications to Incyte's attorney. Stanford also changed the address to which the United States Patent and Trademark Office was to direct all correspondence regarding these applications to Incyte's attorney's address.

■ In October 1998, as part of the prosecution of the applications, Incyte's attorney requested interferences before the United States Board of Patent Appeals and Interferences ("the Board") with respect to two of Affymetrix's patents, U.S. patent no. 5,800,992, entitled "Method of Detecting Nucleic Acids," and U.S. patent no. 5,744,305, entitled "Arrays of Materials Attached to a Substrate." An interference is a proceeding in which the Board determines which of two or more different parties was the first inventor of the claimed invention. 35 U.S.C. § 135. The Board granted Incyte's requests for interferences in April 1999. The notice of real party in interest filed in each interference proceeding indicated that the involved applications were assigned to Stanford and that Incyte was the exclusive licensee. Throughout their pendency before the Board, Incyte directed the interferences through Incyte's attorney, although Stanford was given the opportunity to approve all papers prior to filing.

The Board held a consolidated hearing on both interferences in August 1999. Incyte's attorney represented Brown et al. at the hearing. On September 10, 1999, the Board ruled in favor of Affymetrix in both interferences.

During the course of the interference proceedings, the Board never formally considered whether Incyte was a party to the interferences. However, on the page following the order and the judges' signatures in each of its decisions, the Board identified Incyte as a "real part[y] in interest."

Incyte filed the present action for review of the Board's decisions pursuant to 35 U.S.C. § 146 on November 8, 1999 (within sixty days of the Board's decisions). Affymetrix moved to dismiss the original complaint for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and for failure to join a necessary party pursuant to Rule 12(b)(7) because the patent applications on which the interferences were based are owned by Stanford, not Incyte, and Stanford was not a party to the action. Incyte and Stanford filed an amended complaint on February 16, 2000 (more than sixty days after the Board's decisions), in which Stanford joined as a plaintiff. Affymetrix thereafter filed the present motion to dismiss the first amended complaint pursuant solely to Rule 12(b)(1).

## II. DISCUSSION

■ Section 146 provides: "Any party to an interference dissatisfied with the decision of the Board of Patent Appeals and Interferences on the interference, may have remedy by civil action, if commenced within [generally] sixty days" after the Board's decision is rendered. Accordingly, the present action had to be filed by a party to the interferences within sixty days after the Board rendered its decisions on the interferences in order for this Court to have jurisdiction under § 146.

Affymetrix raises the question of who is included within the term "any party to an interference" in § 146. Neither § 146 itself nor its legislative history provides any guidance as to the meaning of "any party," and there is no case on point.

There is no doubt that the inventors themselves are parties to the interferences, for they—and only they—are listed as such on all documents filed with and by the Board. Affymetrix concedes that the inventors are not the only parties, for entities to whom inventors have conveyed sub-

stantial rights in their patents and patent applications, such as assignees of patents, also are considered parties to interferences. *See* 37 C.F.R. § 1.601(1) ("party is an applicant or patentee involved in the interference or a legal representative or an assignee of record in the Patent and Trademark Office of an applicant or patentee involved in an interference").

Although no case provides guidance as to the meaning of "any party" in § 146, *Paper Container Manufacturing Co. v. Dixie Cup Co.*, 170 F.2d 333 (3d Cir.1948), involving an R.S. § 4915 action, is instructive. Section 4915 was the predecessor statute to § 146. It read in pertinent part that "whenever any applicant is dissatisfied with the decision of the board of interference examiners, the applicant . . . may have remedy by bill of equity, if filed within six months after such . . . decision." In *Paper Container*, the defendant, Dixie Cup Co., moved to dismiss for lack of subject-matter jurisdiction because the suit purportedly was not brought by the real party in interest, Reconstruction Finance Corporation ("RFC"). During the pendency of the interference proceeding, RFC made a loan to plaintiff Paper Container Manufacturing Co. ("Paper Container") and received as security an assignment of the application at issue in the interference. *See id.* at 334. The assignment provided that Paper Container would have a nonexclusive, nonassignable and royalty-free right and license to make and vend the subject matter of the application but that RFC agreed not to license any person to manufacture products in direct competition with Paper Container without Paper Container's written approval. *See id.* at 335. In addition, Paper Container had the right to bring enforcement proceedings in its own name and in the name of RFC as complainants upon procuring the permission of RFC. Paper Container also was obligated to notify RFC of any interference involving applications covered by the assignment and to prosecute those interferences at Paper Container's own expense. Finally, Paper Container agreed to prosecute all patent applications and not to abandon any application without RFC's consent. *See id.* at 335–36. The Third Circuit found that both Paper Container and RFC had a substantial interest in the application at issue and that their interests were not adverse to one another. *See id.* at 337. Upon these facts, the Third Circuit held that Paper Container was an "applicant" within the purview of § 4915's phrase "any applicant." *See id.* at 338. Accordingly, the Third Circuit concluded that it had jurisdiction over the action. *See id.* at 339.

The present case is analogous to *Paper Container*. Here, both Stanford and Incyte were listed in the notice of real party in interest filed in each of the interferences. Stanford gave Incyte's attorney a power of attorney to act in the '875 and '488 applications and to request the interferences. Incyte's attorney, at Incyte's direction, requested and conducted the interferences. Incyte paid the expenses associated with the proceedings and in all respects functionally acted as Stanford's legal representative. The Board implicitly acknowledged Incyte as a "real part[y] in interest" in its decisions.

These facts demonstrate Incyte's entitlement to file and maintain this § 146 action. This conclusion is supported by the substantial and exclusive rights granted to Incyte to make, use and sell products worldwide stemming from the patent applications; to grant sublicenses without Stanford's approval and to institute infringement actions after merely giving notice to Stanford. *Cf. E.I. duPont de Nemours & Co. v. Celanese Corp.*, 285 F.Supp. 819, 821 (S.D.N.Y.1968).

█ Because § 146 provides that "any party" to an interference may bring an action in district court, the determination that Incyte was a party to the interferences at issue necessarily leads to the conclusion that the Court has jurisdiction over this action. Nevertheless, Affymetrix contends that the Court lacks jurisdiction because Stanford is a necessary party pursuant to Federal Rule of Civil Procedure

19(a) and was not joined within sixty days after the Board issued its decisions on the interferences. This argument ignores the plain language that "any party" dissatisfied with the Board's decision—not all dissatisfied parties—may file suit within sixty days to establish jurisdiction. The cases cited by Affymetrix regarding the right of defendants to notice within the statutory period as well as the cases cited regarding the joinder of parties do not indicate otherwise. *See Turchan v. Bailey Meter Co.*, 19 F.R.D. 201, 205 (D.Del.1956) (to find in § 146 jurisdictional requirement that every potential plaintiff must join action would deny actual plaintiff her rights); *E.I. duPont de Nemours & Co.*, 285 F.Supp. at 821–23; *see also Paper Container*, 170 F.2d at 339 n. 15. Accordingly, the Court has jurisdiction regardless of whether Stanford is a necessary party to this action. In light of the fact that Stanford has joined this action, the Court need not determine whether Stanford is a necessary party which must be joined pursuant to Federal Rule of Civil Procedure 19(a).

### III. ORDER

Good cause therefor appearing, the Court ORDERS:

(1) The motion of Defendant Affymetrix, Inc., to dismiss the first amended complaint for lack of jurisdiction over the subject matter pursuant to Federal Rule of Civil Procedure 12(b)(1) is DENIED; and

(2) Defendant Affymetrix, Inc., shall serve and file its answer to the first amended complaint not later than thirty days after receipt of this order.